No. 17,961.

THE NORTHRUP NATIONAL BANK, *Appellant,* v. THE
WEBSTER REFINING COMPANY et al. (THE ÆTNA OIL
AND GAS COMPANY et al., *Appellees*).

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. REFEREE — *Findings Not Challenged by Motion · to Modify
Judgment.* Where a referee is appointed to find the facts and
conclusions of law in an action, his report of · the facts, ap-
proved by the court, is not challenged by a motion to modify
and amend the judgment.

2. SAME—*Appeal—Errors of Law Only Reviewable.* On an ap-
peal from an order overruling such motion to modify and
amend a judgment, errors of law only can be considered.

3. COSTS—*Equitable Apportionment—Judicial Discretion.* The
apportionment of costs as between the parties recovering
judgments, in case the costs can only be made from the funds
in the hands of the receiver, rests in the judicial discretion of
the court, and such order of apportionment can not be re-
versed or changed except for an abuse of such discretion.

Appeal from Allen district court; OSCAR FOUST,
judge. Opinion filed February 7, 1914. Affirmed.

*S. A. Gard,* and *Baxter D. McClain,* both of Iola, for
the appellant.

*G. A. Amos,* of Humboldt, for the appellees.

The opinion of the court was delivered by

SMITH, J.: The former decision of this case (*Bank
v. Refining Co.,* 89 Kan. 738, 132 Pac. 832) was based
entirely upon the absence of a motion for a new trial.
Not only did the appellee then contend that on account
of the omission of such motion no review of the facts
could be had, but appellant, in its motion for a rehear-
ing, concedes that prominence was given to the find-
ings of facts reported by the referee. Also, it may be
said that, while the assignment of errors was suf-

ficient to justify the appeal, neither the abstract nor the brief of appellant indicated the remedy desired. However, as a motion to modify and amend the judgment was presented to the trial court, under the provisions of section 300 of the code of civil procedure, a rehearing was granted and the appeal is entertained.

The action was commenced May 5, 1908, to foreclose certain real-estate and chattel mortgages, two of which were in the form of bills of sale, against the Webster Refining Company, located at Humboldt, Kan., given to secure a loan of $10,000 and interest. The real estate described in the mortgage, designated "A," consists of certain lots and blocks in an addition to the city of Humboldt. The chattel mortgages, designated "B," "C," "D," and "E," described the mortgaged property generally as located upon the real estate described in mortgage "A," or as used in connection with the Webster Refining Company's plant. The chattel mortgages contained the usual provisions in regard to possession in the refining company until default be made in payment, or upon certain other specified conditions, that the bank might take the same into its own possession. The bill of sale designated "C" was to become absolute within one year. The other bill of sale by its terms was absolute upon its execution, but also by its terms was given as security for the loan of $10,000.

On April 16, 1908, upon the back of a written demand, C. D. Webster executed the following writing:

"In pursuance of the within demand I hereby surrender the possession of the within chattel property to the said A. L. Brumbaugh, L. L. Northrup and F. J. Horton of Iola, Kansas.

"Witness my hand at Okmulgee, Oklahoma, this 16 day of April, 1908.      (Signed)    C. D. WEBSTER,
                                                    *Pres. of Webster Refining Co.*"

Webster also executed a like writing purporting to surrender the possession of the property described in instruments "D" and "E" to Brumbaugh, Northrup and Horton.

On February 24, 1908, Eastham & Jackson obtained a judgment against the refining company for $179.50 and costs. On April 20, 1908, the Humboldt Telephone Company obtained a judgment against the refining company for $43.50 and costs, and on April 22, 1908, executions were issued on each judgment and levied by a constable on a lot of tar and distillate, the property was advertised for sale, and the sale was enjoined by the order of the district court on the petition of appellant.

Thereafter a receiver was appointed on the application of the bank to take charge of all the property mortgaged and levied upon, and an order was entered making the judgment creditors parties to the action and restraining them from proceeding with the execution sales. Thereupon some thirty persons, firms and corporations, upon leave of court, filed interpleas and set up claims in the action, and on the application of the interpleaders the court appointed A. H. Campbell as referee with authority to hear, try and determine the issues pending in the case, make and state findings of fact and conclusions of law, and file a full report in court. Mr. Campbell being unable to serve, the court thereafter substituted John F. Goshorn in his place, who began taking testimony in December, 1909, and continued from time to time until July, 1911. He filed his report July 20, 1911.

As stated by the appellant, the report consisted of four hundred forty-one typewritten sheets, practically all of which was the evidence pertaining to one issue, viz.: whether or not the plaintiff bank was a mortgagee in possession. It also appears that the refining company filed only a general denial in answer to the petitions for foreclosure and no further defense was made by it.

In its petition for rehearing the appellant states that the refining company made no defense to its petition except to file a general denial. This appears to be true,

and it is true also as to the claims of the interpleaders, if, indeed, the refining company even denied their claims. The necessity for a referee arose over the claims of the interpleaders, which the appellant resisted, and by far the larger amount of costs incurred were made over this controversy, the appellant claiming that it was a mortgagee in possession and the interpleaders claiming that it was not in possession. Upon this issue the referee found in favor of the interpleaders. In its petition the appellant asserts that upon the issues raised upon the question of its being a mortgagee in possession the referee and trial judge found in its favor. The first finding of the referee, which was approved by the court, reads as follows:

"That the plaintiff, the Northrup National Bank, was not at any time in possession of, neither did it at any time exercise any control over the property of the defendant, The Webster Refining Company, either directly or by, or through any agent on its behalf authorized."

We can not understand the claim, as answered by the finding, except in view of the argument made that the mortgages, bills of sale and instruments, signed by Webster, conveyed the possession to the plaintiff. It is true that the mortgages gave the right of possession to appellant upon default of payment and other conditions; that one of the bills of sale by its terms was to become absolute if the debt were not paid within one year, and another purported to be a full conveyance of a one-half interest in the property described therein; yet, as said by appellant in the abstract, all of these instruments were taken as security for the payment of an indebtedness. The bills of sale were therefore but chattel mortgages. The conditions of these instruments having been broken by the refining company, they conveyed the right of possession to appellant, as did also the writing signed by Webster as president of the refining company on April 16, 1908, but our at-

tention is not called to any finding that the appellant ever exercised this right and actually took possession by itself or authorized agent, and the first finding above referred to negatives any idea that the appellant ever did take possession. There is a difference between actual possession and the right of possession.

By the provisions of section 300 of the code the finding of fact by a referee has the effect of a special verdict, and, by analogy, can be reviewed, in the first instance, only by the trial court. No review thereof in that court was invoked, but only a modification of the judgment was asked. The provision cited in section 307 of the code is applicable only, as it purports to be, under a motion for a new trial. It follows that the facts are conclusively determined by the findings, and no modification of the judgment can be had unless the conclusions of law are not justified by the facts.

Among the claims of the interpleaders, to which it is claimed no preference should have been allowed over appellant's mortgage liens, are those of Joe Irwin and S. H. Cornelius. With reference to these claims, finding No. 8 reads as follows:

"That the claims of the following persons in amounts set after the names of each, together with interest thereon from the dates indicated, respectively, at the rate of six per cent, are past due and unpaid and owing from the defendant, are for wages due to laborers or employes, and that such laborers or employes were not officers of the defendant, respectively, and that said wages accrued respectively, within six months immediately preceding the appointment of a receiver in this action, to wit:

"Joe Irwin ....... $31.10...February 17, 1908.
"S. H. Cornelius... 180.00..... March 20, 1908."

This finding brings the claims of these laborers for wages fairly within the provisions of section 4660 of the General Statutes of 1909, which was enacted prior to the giving of any of appellant's mortgages, and

entitles these interpleaders to preference over the claims of the appellant.

There is no finding as to whether or not the claims of the interpleaders, Eastham & Johnson and the Humboldt Telephone Company, originated as did those of Irwin and Cornelius, but as the claims were allowed preference, evidently with the statute in mind, a presumption should be indulged in support of the judgment rather than to defeat it. If these parties had valid labor claims which were entitled to priority under the statute, and had judgments therefor, and sufficient property held and advertised for sale under executions issued on the judgments; and if by the injunction, secured by appellant, the sale was stayed, the property turned over to the receiver and sold by him, and the price thereof became a part of the fund to be apportioned, these judgment creditors should, as found, be paid out of such fund the amount of their judgments. This was the legal conclusion reached and there was no error therein.

As to the question of the allowance and apportionment of costs, it is clear that this case is one that falls within the provisions of section 615 of the civil code, which provides that the costs may be apportioned by the court as in its discretion it may think right and equitable. The appellant, it is true, submitted a motion to the court to retax the costs, and specified therein how it claimed the costs should be taxed. Its plan for a division of the costs was based on the theory that all the issues between the appellant and the interpleaders were determined in favor of the appellant. The contrary seems to be more nearly true, and we think the court did not err in overruling that motion.

We are not prepared to say that the court abused its discretion in taxing the costs all to the defendant refining company in the first instance and in the second instance to the appellant, as between the appellant and the interpleaders. The judgment of the court in this

respect should not be disturbed unless it plainly appears that the court abused the discretion conferred on it by statute.

The judgment is affirmed.