No. 19,555.

M. ALEXANDER, *Appellant*, v. JOHN CLARKSON and M. A. CLARKSON, *Appellees*.

SYLLABUS BY THE COURT.

1. PARTNERSHIP — *Action for Accounting* — *Report of Referee* — *Final Judgment*—*Approval of Journal Entry Taken under Advisement*— *Motion for New Trial Filed Too Late.* In a suit for a partnership accounting the referee found the facts and conclusions of law, which included the terms of an accounting and recommended the kind of a final decree to be rendered. On June 16, 1913, the court overruled the exceptions of both parties to the report and confirmed the report in every particular, but retained jurisdiction of the cause until a sale of certain property provided for in the decree could be had·and the proceeds thereof credited to the accounts of the partners according to their proportionate shares as stated in the decree. After the sale had been confirmed, and on the 19th day of September, 1913, the court rendered final judgment as recommended by the referee and ordered "that a decree be prepared to take effect as of this 19th day of September, 1913, in accordance with the terms of the report of the referee heretofore made and approved." Nothing remained to be done except to approve a journal entry, which was not done until March 6, 1914, at which time the order approving the journal entry recited that the judgment "be and it is hereby made and entered as of September 19, 1913." No motion for a new trial was filed until the 7th day of March, 1914. *Held,* that the motion was filed too late.

2. SAME—*Exceptions to Report of Referee—Not a Motion for New Trial.* The filing of exceptions to the report of the referee and the renewal of them before the court can not be regarded as a motion for a new trial and will not entitle the defeated party to a review of a judgment based upon the report of the referee.

3. SAME — *Supplemental Pleadings* — *Within Discretion of Court.* The rule that an order allowing or refusing to permit the filing of supplemental pleadings rests in the·discretion of the court and will not be disturbed where it does not appear that the judge abused his discretion, followed, and held that on the facts stated in the opinion it was not an abuse of discretion for the trial court to refuse to consider a supplemental petition filed by plaintiff seven months after the rendition of the judgment.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed July 10, 1915. Affirmed.

*W. P. Hackney, L. D. Moore,* both of Winfield, and *J. T. Lafferty,* of Kansas City, Mo., for the appellant.

*G. H. Buckman, S. C. Bloss, A. M. Jackson,* and *A. L. Noble,* all of Winfield, for the appellees.

The opinion of the court was delivered by

PORTER, J.: There are two actions involved in this appeal, one for an accounting between partners, which will be referred to as the "partnership suit," also an action brought by the First National Bank of Winfield against the same defendants upon two promissory notes, which action will be referred to as the "bank case," and which is only indirectly involved herein. The partnership suit was commenced on June 30, 1904, and was pending in court for more than nine years. The case was referred to two different referees. The findings and report of the first referee were set aside by the court, and another referee appointed who heard the evidence, examined the accounts of the parties and reported his findings of fact and conclusions of law and recommended the kind of a final decree to be rendered. Both parties filed exceptions to the report, but these were overruled by the court and the referee's report was confirmed in every particular and a final decree was rendered in accordance with his recommendation. Alexander, who is the plaintiff, appeals from the judgment.

The defendants are nephews of the plaintiff. From 1881 Mr. Alexander was engaged in the milling business in Winfield, originally with a partner named Kirk who was his brother-in-law. The business was conducted under the firm name of Kirk & Alexander, and after Kirk's death his widow, Alexander's sister, continued as the partner. Thereafter Mrs. Kirk died and Alexander, who was the executor of her estate, continued the business under the firm name of Kirk & Alexander. He became involved in financial difficulties in 1893, and a partnership arrangement was entered into between himself and his nephews which was still in existence when he brought the suit for accounting. For some reason which is not apparent counsel for the plaintiff devote a very large portion of their brief in an effort to show that no partnership was ever formed between the parties, and many pages of evidence are quoted to demonstrate the absurdity of Alexander giving to his nephews an interest in his business as partners. Alexander's petition alleged a partnership and asked a partnership account-

ing. At the trial of the case before the referee it was admitted that there was a partnership existing, but it was contended by Alexander that the terms of the partnership differed from those contended for by the defendants. The referee, upon all the testimony, found that a partnership existed, and that when the new firm began business in July, 1893, it took over from Kirk & Alexander accounts due the old firm, part of which were collected and a part of which were never collected; that Alexander retained the ownership of the mill property but furnished it free of charge to the firm and was to receive seven-twelfths of the net profits, John Clarkson three-twelfths, and M. A. Clarkson two-twelfths. Counsel for plaintiff make the further contention that if the findings of the referee and the approval of the court to the effect that there was a partnership be regarded as final this court should weigh the evidence and find that Alexander's contentions as to the terms of that partnership are correct and the findings of the referee and the court erroneous. But this court, of course, can not weigh conflicting evidence, and there is no merit in the contention. (*Mason v. Harlow*, 92 Kan. 1042, 142 Pac. 243.) As stated, however, it was agreed by both parties at the hearing before the referee that a partnership was formed in July, 1893, and that it was a question for the referee and the court to determine what were the interests of the partners.

It appears that in 1898 defendant John Clarkson purchased what is known as the "Tunnel Mill" in Winfield, paying part of the consideration himself, the Alexander Milling Company paying the balance. The title to this property was taken in his name, and the mill was operated from that time until 1902 under the name of the Clarkson Milling Company, but the business was kept on the books of the Alexander Milling Company. No separate books were opened and no separate bank account kept. Apparently the mills were operated under separate names in order to enable both to sell flour to merchants in the same town and to lead the public to understand that they were competitors in business. Against the contention of John Clarkson the referee found that the Tunnel Mill property belonged to the partnership.

The business transactions of the partners covering the period of more than nine years became very much involved.

The personal funds and accounts of the members of the firm were apparently not kept separate from those of the partnership. It became necessary to consider a vast amount of evidence, including business transactions, book accounts, the indebtedness of the old firm of Alexander & Kirk, the assignment and transfer of numerous judgments rendered against some of the parties in other litigation, and it was a difficult matter for the referee and the court, out of the confusion of accounts, to determine what was a just accounting between the partners. The referee, however, made an accounting and recommended the dissolution of the partnership, and, as stated, the court approved the findings and conclusions of law. For reasons which will be suggested, we have deemed it necessary to refer to but a few of the findings and a portion of the evidence.

The bank case arose under the following circumstances: On June 10, 1902, the Alexander Milling Company was indebted to the First National Bank of Winfield, and to secure this two notes, one for $3500, and the other for $3000, were executed to the bank, signed by the Clarkson Milling Company, John Clarkson and M. Alexander. The proceeds of the notes were deposited in the firm account of the Alexander Milling Company and used by the partnership, facts which were known to the bank. On October 26, 1903, the bank brought suit upon these notes against John Clarkson and M. A. Clarkson without making Alexander a party. The action was also referred to the same referee, and the pleadings, papers, testimony and records in the bank case were introduced in evidence. Defendants John and M. A. Clarkson asked for an order making Alexander a defendant on the ground that he was a member of the Clarkson Milling Company at all times as shown by the evidence in the accounting case, and that he was an interested party in the action brought by the bank upon the notes. His counsel objected, and stated that if the defendants desired Alexander made a defendant there was a method for them to have him brought in, and that it was too late to raise the question after the hearing had been instituted. The referee overruled the application, holding that the proper way was for the defendants to amend their answer and serve process upon Alexander. During the hearing before the referee the Clarksons at dif-

12—96 KAN.

ferent times sought to have Alexander made a defendant in the bank case, claiming that he was the principal and they were only sureties, but the referee denied all the applications to make him a defendant. The referee found the amount remaining unpaid on the notes due the bank and recommended that judgment be rendered against the Clarksons for this balance, and in accordance with his report judgment was rendered in favor of the bank and against the two Clarksons for $7034.75. The referee found that the indebtedness represented by the notes was incurred by the Alexander Milling Company in the firm business, and recommended that the Tunnel mill, being the only tangible asset of the firm, should be sold and the proceeds applied to the payment of the costs in the accounting case and then to the payment of costs and the judgment in the bank case, and that if the proceeds should be insufficient to pay that judgment in full the Clarksons were to be given credit on their personal accounts with the partnership for the deficiency in the proportion of three-fifths to John Clarkson and two-fifths to M. A. Clarkson. The judgment in the accounting case was rendered in accordance with the recommendations.

The defendants, who are appellees, insist that the plaintiff is not entitled to review the judgment because of the failure to file a motion for a new trial within three days after the rendition of the judgment. On the other hand, the plaintiff contends that the judgment was not rendered until March 6, 1914, and if plaintiff is correct in his contention, the motion was filed in due time.

On the 16th day of June, 1913, the court in a preliminary decree approved the report of the referee and overruled the exceptions of both parties, but at that time did not enter a final judgment, because it was necessary in following the recommendation of the referee to order the Tunnell mill property sold, which the court did, and in the journal entry of judgment approving the report expressly retained jurisdiction to adjust any deficiency in the settlement of the accounts between the Clarksons and Alexander, the journal entry reciting that the net profits "be ascertained after the debts and obligations of said partnership are paid, and all of the costs of this litigation."

It appears from the abstract that there was considerable delay in the entering of the final judgment. The abstract

shows that the report of the referee was filed on October 14, 1912, and was approved by the court on the 16th day of June, 1913. The court, as stated, had ordered a sale of the Tunnel mill property. On the 19th day of September, 1913, the court on motion ordered the sale confirmed, and there is a separate journal entry of this. The abstract shows a journal entry reciting that later, and on the same date, September 19, 1913, the cause came on for hearing upon the motion of defendant John Clarkson for a final decree as provided by the report of the referee. The journal entry then recites as follows:

"And thereupon after hearing the argument of counsel and being sufficiently advised in the premises, the court orders that a decree be prepared to take effect as of this 19th day of September, 1913, in accordance with the terms of the report of the referee heretofore made and approved."

It further recites that the plaintiff and defendant John Clarkson each submitted to the court a separate draft of final decree and judgment, "and the court takes the matter of final approval and entry hereof under advisement and continues said cause." There were several continuances of the hearing as to the form of the journal entry. On the 6th day of March, 1914, the court approved the draft submitted by defendant John Clarkson, which followed the recommendation of the referee, and the journal entry recites "that this judgment be and it is hereby made and entered as of September 19, 1913." The motion for a new trial was not filed until the 7th day of March, 1914.

Subsequently, on the 14th day of April, 1914, the plaintiff filed what he calls his "Supplemental Petition to open up judgment and to correct same and to set aside findings of fact last made by the Referee herein, pending motion for new trial, and in addition thereto." On the 18th day of April, 1914, the court denied the motion for a new trial and also the supplemental petition filed in support thereof. We think there can be no question that the motion for a new trial was filed too late.

When the court made its findings of fact and conclusions of law on June 6, 1913, the decision of the court upon the issues submitted was rendered. (*Brubaker v. Brubaker*, 74 Kan. 220, 86 Pac. 455.) The court merely continued the cause for the purpose of ascertaining how much credit on the different judgments should be allowed from the proceeds of the sale of the

Tunnel Mill. Every finding of fact as well as every conclusion of law made by the referee was approved and found by the court on that day. Nothing remained to be done except a mere matter of computation of the credits from the proceeds of the sale. The judgment fixed the proportionate share each party was entitled to in the proceeds, and under the rule declared in *Brubaker v. Brubaker,* supra, the plaintiff should have filed his motion for a new trial within three days after June 16, 1913. But if we regard the decree of that date as only a preliminary decree, as the court labeled it, and not as a final decree, the plaintiff is in no better situation because it can not be questioned that the final decree was rendered on the 19th day of September, 1913. The journal entry of that date recites that the court had already confirmed the sale of the Tunnel Mill and had ascertained the net proceeds thereof, and the court ordered "that a decree be prepared to take effect as of this 19th day of September, 1913, in accordance with the terms of the report of the referee heretofore made and approved."

Subsequently, on March 6, the court approved the decree submitted by the defendants. The case was not continued for the purpose of finding further facts, and no additional facts were found. Nothing remained to be done except to approve a journal entry. There is some contention that no motion for a new trial was necessary because all that was asked was that plaintiff's exceptions to the findings be sustained and different findings made from those reported by the referee, but this required a new trial and made necessary a motion for a new trial. In *Bank v. Refining Co.,* 89 Kan. 738, 132 Pac. 832, it was held that:

"To entitle an appellant to a review of a judgment based upon the report of a referee and to attack the findings of fact it is necessary that a motion for a new trial should have been filed in the trial court." (Syl.)

(See, also, the same case, 91 Kan. 434, 138 Pac. 587.)

All that remains is the question whether it was error for the court to deny the supplemental petition filed April 14, 1914. Although labeled a supplemental petition for a new trial, it set out substantially the contentions plaintiff had made before the referee and in the various exceptions filed in court—matters upon which the court had repeatedly ruled adversely to the plaintiff. It contained, however, some new matters and some

matters that were not so new. It set forth a copy of a written agreement entered into between the bank and Alexander in October, 1903, before the bank commenced suit against the Clarksons on the notes, by which it was agreed that the bank should institute a suit against the Clarksons and was not to sue Alexander, and he agreed not to raise that fact in any further suit by the bank to recover from him any judgment upon the notes that might not be collected from the Clarksons. The agreement was signed by Alexander, for himself, and E. W. Bolinger, cashier of the bank, on behalf of the bank. It then recites that the bank had complied with the agreement not to begin suit against Alexander; that neither of defendants had any money or property out of which the judgment remaining unpaid can be enforced; that the court in its final decree had treated the judgment in favor of the bank and against the defendants as paid by the defendants, although it had not been paid, and that the bank, being unable to enforce collection of the judgment, had subsequently demanded payment from Alexander and had threatened to commence an action against him upon the agreement; that on April 14, 1914, he paid the bank the judgment and took an assignment of the same. The prayer of the supplemental petition was that the plaintiff be credited by the court in the partnership case with the amount of the judgment.

The defendants call attention to the evidence in the bank case taken before the referee in which Bolinger, cashier of the bank, testified that there was no understanding or agreement, written or otherwise, between the bank and Alexander that he should not be sued upon the notes, and that this evidence of Bolinger was given in proceedings in which the Clarksons sought to have Alexander made a defendant. The judgment in the bank case was rendered on June 16, 1913, and in that case no appeal has been taken. The plaintiff alleges in his supplemental petition that he paid the judgment, to which he was not a party, nearly a year after it was rendered, and the defendants urge that he paid it, if at all, as a mere volunteer; that the notes and agreement were barred by limitations, and that he had a good defense to any action the bank might bring against him; and further, that in view of his conduct in seeking, with the bank's aid, to avoid liability for his share of a

partnership debt, there are no equities in his favor which should move the court to come to his relief.

In plaintiff's exceptions before the referee there is one to conclusion of law number 7, in which the referee recommended the application of the proceeds of the sale of the Tunnel Mill which the court followed, and the exception was based upon the ground that it was not supported by the evidence and was not the correct manner of reaching the respective interests of the several partners. Later more elaborate exceptions were filed, including one in which it was contended that no credit should be given to either of the Clarksons on account of the notes held by the bank until the same were paid; but so far as we can discover from the abstract it was not until long after the report of the referee had been approved, and indeed not until long after the final judgment was rendered, that Alexander changed his attitude and for the first time claimed he was liable to the bank upon the indebtedness represented by the notes, or that he would be compelled to pay the judgment.

An order allowing or refusing to allow the amendment of pleadings or supplemental pleadings will not be disturbed where it does not appear that the judge abused his discretion. (*C. B. U. P. Rld. Co. v. Andrews,* 41 Kan. 370, 21 Pac. 76; *Rogers v. Hodgson,* 46 Kan. 276, 26 Pac. 732; *Kennett v. Van Tassell,* 70 Kan. 811, 79 Pac. 665; *Matson v. Railway Co.,* 80 Kan. 272, 102 Pac. 254.)

Was it an abuse of discretion for the trial court long after the rendition of the judgment in both cases to refuse to consider a supplemental petition setting up facts respecting plaintiff's liability to the bank which he knew when the cases were commenced? In view of the long years in which this case had been pending in court, the numerous delays and adjournments, and all the facts and circumstances before the court, it certainly can not be said that it was an abuse of discretion to refuse to permit the matter to be reopened in that way. It appears from the counter-abstract that soon after the judgment was rendered against Alexander and in favor of the defendant, Clarkson assigned and transferred his judgment to a third party, and that the assignment was made a matter of record in the office of the clerk of the court, and further, that several months before the alleged payment by Alexander of the

bank's judgment and its assignment to him by the bank the attorneys for defendants filed in the district court notice of liens for their fees upon the judgment in favor of Clarkson and against the plaintiff. If the court had allowed the filing of the supplemental petition so far as it relates to the claim arising out of the alleged payment and assignment of the bank's judgment it would have been obliged to bring in all the other parties who claim an interest in the other judgment in order to determine the rights of the parties, and thus the litigation would have been prolonged indefinitely.

There was no abuse of discretion in the court's refusal to entertain the supplemental petition, and as the motion for a new trial was not filed in time the other claims of error can not be considered.

The judgment must therefore be affirmed.