No. 20,764.

M. ALEXANDER, *Appellant,* v. JOHN CLARKSON et al., *Appellees.*

SYLLABUS BY THE COURT.

1. FORMER JUDGMENT—*Matters Involved—Res Judicata.* All matters involved in the litigation reported in *Alexander v. Clarkson,* 96 Kan. 174, 150 Pac. 576, are *res judicata.*

2. SET-OFF—*One Judgment Against Another.* Before one judgment can be set off against another judgment there must be mutuality in those judgments and no contravening equities.

3. GARNISHMENT PROCEEDINGS—*Abandoned—Ineffective.* Where a garnishment proceeding has been commenced by filing a petition, giving bond, and service of summons, but the garnishee makes no answer and issues are not joined, no judgment entered and no execution issued, the garnishee acquires no claim against the debtor in such abortive garnishment proceeding by acquiring an assignment of a judgment against the debtor rendered in another action.

4. ASSIGNMENT OF JUDGMENT—*Sufficient Consideration.* If a judgment is assigned as security for a *bona fide* antecedent indebtedness the consideration for such assignment is sufficient.

5. ATTORNEY'S LIEN—*Statutory Notice of Lien.* Section 484 of the General Statutes of 1915, amending section 395 of the General Statutes of 1901, is an enlargement and not a restriction of the methods of service of notice of an attorney's lien, and the service of a written notice of such lien upon the attorneys of record for the adverse party is sufficient, following *Noftzger v. Moffett,* 63 Kan. 354, 65 Pac. 670.

6. SET-OFF—*No Proper Set-off Between Certain Judgments.* In certain prior litigation one of the defendants herein had recovered a judgment against the present plaintiff, and an attorney's lien had been

properly served on the plaintiff, and subject to that lien the successful defendant in the prior case had assigned his judgment to a bank's trustee as security for a *bona fide* indebtedness of long standing. After the attachment of this lien and after the assignment of the judgment the plaintiff acquired by assignment a judgment against his judgment creditor and another, and commenced a proceeding against the debtors under the judgment assigned to him and against the attorneys holding the lien on the judgment against him and against the trustee holding that judgment. In this latter proceeding the plaintiff sought to have the merits of the original judgments reconsidered, which in effect meant to open them, and to set off the judgment he had acquired against two of the defendants against the judgment against himself, and to restrain the enforcement of the judgment against him. *Held,* that the former judgments were *res judicata,* that the judgment against him and the one he had acquired were not mutual, and that the contravening equities based on the prior assignment of the judgment against him and the attorney's lien thereon would not permit a set-off between the judgments.

Appeal from Cowley district court; ALLISON T. AYRES, judge *pro tem.* Opinion filed April 7, 1917. Affirmed.

*W. P. Hackney, L. D. Moore,* both of Winfield, and *J. T. Lafferty,* of Kansas City, Mo., for the appellant.

*Alfred M. Jackson, Albert L. Noble,* and *S. C. Bloss,* all of Winfield, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This case is the aftermath of prior litigation, a full summary of which is set forth in *Alexander v. Clarkson,* 96 Kan. 174, 150 Pac. 576. This prior litigation had two main aspects: one was an accounting suit between the plaintiff and some of the present defendants as his partners in the milling business, and the other was an action by the First National Bank of Winfield against those defendant partners to recover on certain promissory notes evidencing certain of the partnership indebtedness and in which action the plaintiff, Alexander, had not been made a party defendant because of a private agreement between Alexander and the bank to that effect. In the partnership accounting case one of Alexander's partners, John Clarkson, obtained a judgment against him. The attorneys for Alexander's partners have a lien for their services on that judgment. In the bank's case a judgment was en-

tered against Alexander's partners and that judgment has been assigned to Alexander. Subject to the attorney's lien in the partnership case the judgment in favor of John Clarkson and against Alexander has been assigned to J. E. Jarvis, president of the Cowley County National Bank of Winfield, as trustee for his bank. The attorney's lien and the Jarvis assignment antedate the assignment to Alexander.

After the appeals in the bank case and the partnership accounting case were disposed of in *Alexander v. Clarkson,* supra, decided July 10, 1915, the present action was commenced by the plaintiff against his former partners and their attorneys and the trustee to whom the judgment against plaintiff had been assigned. The petition rehearsed certain features of the earlier litigation and narrated the plaintiff's situation as decreed by those judgments, and that the supreme court had refused to consider certain errors assigned in his appeal because the motion for a new trial was filed more than three days after the judgments were rendered, although filed within three days after the formal journal entry of judgment reciting the terms of the decree was approved by the trial court. The petition is cumbered to a considerable degree with what the plaintiff chooses to urge as the wrongs, hardships and injustice to which he had been subjected as a result of the earlier litigation, and concludes with a prayer that the partnership accounts be recast, and that a new decree be entered therein adjusting the partnership matters between the plaintiff and his defendant partners, and that he be given credit for the amount of the bank's judgment against the Clarksons and assigned to him, and that the defendants be restrained from proceeding to enforce the collection of the judgment to which he was subjected in the partnership accounting suit.

Issues were joined and the trial court's judgment reads:

"First: That as between the Cowley County National Bank and Alexander the equities in the case [are] with the Bank.

"Second: That as between the attorney's lien claim and Alexander, the equities were in favor of the attorneys lien.

"Third: That the judgment rendered on the 6th day of March, 1914, and dated back to September 19, 1913, was *res adjudicata* as to all questions involved in this case."

The plaintiff appeals. With his alleged grievances touching the earlier and concluded chapters of the ten-years' litigious warfare between Alexander and the Clarksons and their creditors we have no present concern. Our only jurisdiction at present is to review the correctness of the judgment which we have just quoted. There are two important ends in view in every lawsuit: the first is that it be decided *right;* and the second, which is only less important than the first, is that it be *decided.* (*New v. Smith,* 97 Kan. 580, 155 Pac. 1080.) All the matters which were litigated between the parties in the partnership accounting suit and in the bank's case are concluded by the judgments entered therein and are now *res judicata.* Those judgments determined for all time the sum which Alexander must pay to Clarkson or his assignee, and what the Clarksons must pay the First National Bank or its assignee. It is no longer a matter of any concern that Alexander had a private agreement with the First National Bank whereby the bank refrained from making him a defendant in its action against his partners to recover on the partnership notes, or that he and the bank official forgot or lied about that matter when the Clarksons sought to prove it, nor can the predicament in which Alexander now finds himself on account of that private agreement affect the rights of the parties as crystallized in the judgments in the earlier litigation. And it is no longer of any judicial consequence that Alexander's motion for a new trial in the earlier litigation was out of time. Those judgments, being final, can not now be modified or disturbed.

Let us then turn to the questions involved in this appeal.

There is no objection to an equitable proceeding to set off one judgment against another unless intervening rights are prejudiced thereby. (*Hillis v. National Bank,* 54 Kan. 421, 423, 38 Pac. 565; *Railroad Co. v. Murray,* 57 Kan. 697, 47 Pac. 835; 15 R. C. L. 820.) But since the trustee of the Cowley County National Bank had secured an assignment of Clarkson's judgment against Alexander, and it was also subjected to a timely lien before Alexander acquired the assignment of the First National Bank's judgment against Alexander, we see no way to set off these respective judgments against each other. In *Schuler v. Collins,* 63 Kan. 372, 374, 65 Pac. 662, it was said:

"The existence of mutual judgments does not entitle a party to have one set off against the other arbitrarily as a matter of right. Whether application for set-off is by motion or through a proceeding in equity, it is to be determined upon equitable considerations, and is only allowed when it will promote substantial justice. This was the ruling in *Herman v. Miller*, 17 Kan. 328, where it was said that 'the exercise of that power is in a measure discretionary, and it will not be exercised in cases in which it would be inequitable so to do.' (See cases cited, and, also, *Boyer v. Clark and McCandless*, 3 Neb. 167; *Lundberg v. Davidson*, 68 Minn. 328, 71 N. W. 395, 72 N. W. 71; *Pirie et al. v. Harkness*, 3 S. Dak. 178, 52 N. W. 581; *Hroch v. Aultman & Taylor Co.*, 3 *id.* 477, 54 N. W. 269; *Bartlett v. Pearson*, 29 Me. 9; Freem. Judg. 427-467; Black, Judg. §§ 954, 1000.)" (p. 374.)

Other decisions are to the same effect. (*Pheiffer &c. v. Harris*, 74 Ky. [11 Bush.] 400; *Silver v. Krellman*, 85 N. Y. Sup. 945; *Goldman v. Tobias*, 88 N Y. Sup. 991; *Elms v. Arn*, [Okla. 1916] 158 Pac. 1150.) See, also, a twelve-page note on the subject of setting off one judgment against another in 109 Am. St. Rep. 137 *et seq.*

In some jurisdictions the matter is regulated by statute. (*First Nat. Bank of Louisville v. Krieger's Assignee*, 28 Ky. L. Rep. 612, 89 S. W. 733.) Sometimes it is held that where judgments are strictly mutual an assignment is subject to the judgment debtor's right to set off another judgment which he has obtained against his judgment creditor (23 L. R. A. 335, Note; 15 R. C. L. 823), but where the judgments are not mutual the ordinary rule seems to be and ought to be that a *bona fide* assignee, especially where the element of priority is involved, is protected.

In 15 R. C. L. 823, 824, it is said:

"The setting off of one judgment against another is not a legal right, but is a matter of grace, and the question whether a set-off should or should not be decreed rests in the sound discretion of the court to which the application is made. . . . The action of a court of law in granting or refusing a set-off is governed by the principles of equity and justice, and allowed only where good conscience requires it. It will never be permitted when the effect would be to deprive a party of his legal rights. Accordingly in the exercise of the power of set-off, equitable rights of persons not parties to the suit may be considered and protected. Since good conscience is far from requiring that an attorney's claim for services in securing the judgment should yield to the claim of those holding rights adverse to his clients, it is a general rule that a judgment creditor can not defeat the attorney's lien, even by giving the attorney notice of an intended set-off."

The judgments here sought to be set off against each other are not mutual between Alexander and the Clarksons. They were never coexistent cross demands in the hands of Alexander and Clarkson. One is a judgment in favor of John Clarkson against Alexander. The other is a judgment in favor of the First National Bank against the Clarksons. Clarkson has parted with his interest in his judgment. The bank has parted with its interest in its judgment. There was no mutuality in these judgments when rendered. There is certainly none now.. The rights of third parties attached before this proceeding to set off was begun, and before the present cause of action—the acquisition of the bank's judgment by Alexander—arose.

We discern nothing tangible in plaintiff's claim under a garnishment proceeding commenced by the First National Bank to garnishee Clarkson's claim against Alexander. The record does not disclose that issues were ever joined in that proceeding, nor any judgment entered therein. Counsel for defendants assert that the garnishment proceeding was abandoned; and plaintiff's petition in this action infers the same, where he pleads:

"That the plaintiff never filed any answer in garnishment in that Bank case because he did not and could not know whether he was indebted to the said John Clarkson, or not until the matters in controversy should thereafter be ascertained by the final determination of this Court in said first named equity action."

There being no answer, no issues joined, no judgment by default or otherwise, no execution in the garnishment proceeding, we see no way to use it as an offset to the judgment against Alexander; and the general finding of the trial court is against the plaintiff on his claim to any right found on this abortive garnishment proceeding. (*Hutchinson v. Nelson,* 63 Kan. 327, 65 Pac. 670.)

The evidence shows that Jarvis holds the legal title to the Clarkson judgment against Alexander as trustee for his bank, which is, and for many years has been, a creditor of John Clarkson to the extent of $10,000, and that the indebtedness was originally incurred in furtherance of the defunct partnership business. Indeed, at one time, as security for this indebtedness, Jarvis's bank had a lien on a mill, the title to

which stood in Clarkson's name, but the mill was subjected to the satisfaction of the partnership debts and sold as partnership property. Surely this was a sufficient consideration for the assignment, whether it was merely as security for Clarkson's indebtedness or in diminution thereof, and it is certainly quite obvious that the equities as between Jarvis and Alexander are with Jarvis as found by the trial court.

It is next urged 'that the attorney's lien on the Clarkson judgment against Alexander is invalid because the service of notice was insufficient. The assignee of this judgment might raise this question, but Alexander's only concern therewith is to be on his guard against paying the judgment without considering the attorney's lien thereon. If Alexander should pay the judgment in full regardless of this notice, and the attorneys having the lien should seek to hold him thereon— to make him pay a second time on account of it—his present question as to the sufficiency of the notice would be all important. This view, however, is not presented by counsel for defendants, and it may be proper to consider the question as presented. The statute provides:

"Such notice must be in writing, and may be served in the same manner as a summons, and upon any person, officer or agent upon whom a summons under the laws of this state may be served, and may also be served upon a regularly employed salaried attorney of the party." (Gen. Stat. 1915, § 484.)

The written notice of the attorney's lien was served upon Alexander's attorneys of record in the action in which the judgment was rendered and in which the attorney's services were performed. It was filed in court. Alexander knew about it. His counsel knew about it. All this was before Alexander procured an assignment of the judgment which he seeks to offset against the Clarkson judgment. In *Noftzger v. Moffett,* 63 Kan. 354, 65 Pac. 670, it is said that service of a written notice of an attorney's lien on the attorney of record for the adverse party is sufficient. The new statute takes nothing from the old (Gen. Stat. 1901, § 395), but adds that the notice *must* be in writing, and that it *may* be served as above provided. That the notice be in writing is imperative. The manner of service is not so important, the chief consideration being the fact of service—that notice be brought home to the

party adjudged to pay—and here there is no doubt on that point. It seems that the legislature intended that notice might be served upon any regularly employed salaried attorney for the litigant although the latter was not the attorney in the particular litigation. We feel quite positive that the legislature did not intend to limit but to enlarge the methods of giving notice. However, it seems clear that only the assignee of the Clarkson judgment can question the sufficiency of the service of the notice of the attorney's lien. If the lien should fail the trustee of the Cowley County National Bank would take the entire interest of the Clarkson judgment, and his right thereto is unassailable by Alexander.

This disposes of the questions directly concerned in the present case, and nothing approaching the gravity of reversible error can be discerned. We do not think it proper to extend this opinion by attempting to follow counsel for plaintiff through the wide range of their discussion of the merits or demerits of the antecedent litigation.

The judgment is affirmed.