No. 33,655

EDITH ROWE WEICHOLD, by Her Guardian and Next Friend, WILLIAM WEICHOLD, *Appellee,* v. HARLAN DAY and EDWIN GENTHE, *Appellees;* ETTA M. ROSE, JOHN ROSE, ALTON ROSE and VICTOR ROSE, Minors, Etc., et al., *Appellants.*

(78 P. 2d 361)

Opinion denying motion for rehearing filed April 22, 1938. (For original opinion see ante, p. 367, 76 P. 2d 784.)

*Karl V. Shawver* and *J. O. Rankin,* both of Paola, for the appellants.

*Bernard L. Sheridan, Frank M. Sheridan, L. Perry Bishop* and *B. T. Riley,* all of Paola, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: A motion for a rehearing or modification of our judgment and opinion in this appeal has been presented and carefully considered. It does not shake our confidence in the fundamental justice of the order of this court for bringing this interminable litigation to a close. When the last appeal was presented the brief of counsel for appellants concluded thus:

"This litigation has been extremely prolonged, and we think this court ought to make such order as will definitely end the litigation and settle the title of this land."

Counsel for appellants make a critical analysis of some of the cases cited in our opinion, and argue that they are not sufficiently analogous to govern the case at bar. We cited them not for the closeness of their analogy but as precedents supporting the rule that sometimes justice requires that the burden of protracted litigation must be cast on the estate itself, rather than upon one or more of the rival litigants.

The controlling rule which governed the peremptory order for the disposition of this litigation was the one announced in *New v. Smith,* 97 Kan. 580, 155 Pac. 1080, syl. ¶ 2, and which has been cited and applied in *Alexander v. Clarkson,* 100 Kan. 294, 297, 164 Pac. 294; *Gibson v. Boynton,* 112 Kan. 173, 175, 210 Pac. 648: and *McCleery v. McCleery Lumber Co.,* 136 Kan. 484, 493, 16 P. 2d 517.

It is now argued that the effect of our decision and directions to

the trial court is that the "successful" litigants will pay the costs, which is contrary to the pertinent provisions of the code and the precedents of this court.

The "successful" litigants—who are they? The appellee was successful in protecting the estate from being disposed of under the invalid will of 1919, under which the appellants sought to secure the property to themselves. The principal appellant, Etta M. Rose, has been barred from claiming an interest in the estate by her conduct in respect to the will of 1903. Although the other appellants coöperated with her, as the trial court found, this court in its leniency towards them did not see fit to apply to them the harsh rule of the statute which barred their mother. The acceleration of their interest into present ownership is the result of the operation of a rule of law applied by this court, not invoked by the sons of Etta M. Rose, and arises at their mother's loss, not because of their successful litigation against her, their codefendant and coappellant.

Passing now to the second matter presented in the motion of appellants, clarification of our order respecting costs is sought. In a reply to appellants' motion, counsel for appellees join in this suggestion, and we are advised that the presiding judge has suggested to counsel for the litigants that it would be helpful to him in carrying into effect the mandate of this court if the following questions were answered:

"1. Does the court, by its order, mean that the district court shall go back and determine reasonable attorney fees of these attorneys who are long since deceased and, if so, to whom should such fees be paid?"

Answer: No.

"2. Two or three lawyers, who have been connected with the case and who are still living, have had nothing to do with the case for ten or twelve years. Is the district court required to determine what their fees should be?"

Answer: No.

"3. It is probable that the amount of *work* actually done is about the same on both sides of the case. If attorney's fees have been paid to any attorney connected with the case, should that be taken into account?"

Answer: Yes.

"4. If there is not enough money left in the estate to entirely pay reasonable attorneys' fees, and some attorneys have been paid on the one side, should that be allowed to increase the amount to be paid to the attorneys on the other side?"

Answer: No.

"5. If some of the attorneys have contracts for fees contingent upon success, should the district court take that into consideration in the allowance of fees?"

Answer: We think those contingent-fee contracts should be abrogated; but in any event the district court should ignore them completely.

We do not have sufficient facts on which to advise whether the special services of counsel for Edwin Genthe, a feeble-minded person, should be compensated out of the estate.

Costs in the district court or in this court which have already been paid should be disregarded, as of course.

Appellants make a showing by affidavits that the estate of 400 acres involved is only worth $7,000, and that the receiver's charges thereon are already considerable, and that adequate compensation for counsel, together with the costs, may consume the entire estate. Counsel for appellees, however, show that the assessed value of the property is $11,920, which is probably a nearer approximation of its market value. It is quite probable that with due regard to the value of the estate and the other burdens it must bear, the lawyers who have borne the heat and burden of this litigation will have to be content with relatively small compensation for their arduous services; but we cannot doubt that the rule of *noblesse oblige* to which all good lawyers adhere will temper their claims, and the sound judgment of the district court will be its sufficient guide in respect to such details.