## MONTGOMERY v. CHICAGO, B. &. Q. R. CO.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1915.)

No. 4488.

1. CARRIERS ⬥32—RATES—DISCRIMINATION—CARRIAGE OF CARRIER'S PROPERTY.

Conceding that a carrier has no right to enter the field of general business and transport the articles and commodities used and sold therein at less than the regular published rates available to the general public, it has the right to provide eating houses for its passengers and employés at points on its line, and may transport the articles and commodities for the use of such eating houses at less than the full published rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. ⬥32.]

2. COMMERCE ⬥85—INTERSTATE COMMERCE COMMISSION—POWERS AND FUNCTIONS.

The establishment by carriers of eating houses for passengers and employés, and the transportation of articles and commodities therefor at less than the published rate, are administrative practices, and the ultimate primary judgment and discretion which govern and condition them is lodged in the Interstate Commerce Commission, to be exercised on request and after due investigation and consideration of the public interest concerned, and in view of the preference and discrimination clauses of the statute.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. ⬥85.]

3. COMMERCE ⬥92—INTERSTATE COMMERCE COMMISSION—POWERS OF COURTS.

Courts have no power to fix rates or establish practices for carriers, and cannot interfere with those fixed and established by the Interstate Commerce Commission, except where the orders are void.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig. ⬥92.]

4. CARRIERS ⬥36—INTERSTATE COMMERCE—ACTIONS FOR DAMAGES—PLEADING.

The Interstate Commerce Commission adopted a rule that carriers might provide eating houses for passengers and employés, and that property therefor might be regarded as necessary and intended for the use of such carriers in the conduct of their business, but that such eating houses must not serve the general public with food prepared from commodities carried at less than the published rate; and that no utensils, etc., employed in serving others than passengers and employés should be carried at less than tariff rates. In a restaurant proprietor's action for damages, it was alleged that a railroad company had opened a restaurant in connection with a station, and operated it for the accommodation of passengers and employés; that it also served the general public; that it shipped on its trains free of charge most of the commodities and supplies used in such business, while plaintiff for like shipments was required to pay the regular published rates; that by reason thereof it was able to sell at prices below those at which plaintiff could make a profit; that, prior to the establishment of defendant's restaurant, plaintiff's daily receipts exceeded

$100 a day, and his net profits $25 a day; that defendant's competition had caused a decrease in the daily receipts to less than $50 a day and a decrease in the profits to practically nothing; that plaintiff had been damaged by loss of profits in a sum therein specified; and that there had always been ample facility at plaintiff's restaurant and other eating houses for the accommodation of the general public, including defendant's employés. *Held,* that no cause of action was stated, and the case presented was one requiring determination by the Interstate Commerce Commission as to whether the establishment of an eating house at the point in question was proper, as the petition did not show that all supplies were carried free of charge, nor that the general public was served with food prepared from commodities so carried, but did squarely challenge defendant's right to establish an eating house at that point, and, moreover, it did not appear that plaintiff's loss of business was not due to causes not chargeable to defendant.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. ☞36.]

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by Roy Montgomery against the Chicago, Burlington & Quincy Railroad Company. Judgment dismissing the action, and plaintiff brings error. Affirmed.

Robert P. Parker, of Sheridan, Wyo. (Clyde M. Watts, of Cheyenne, Wyo., on the brief), for plaintiff in error.

Timothy F. Burke, of Cheyenne, Wyo. (Edward T. Clark, of Billings, Mont., and William A. Riner, of Cheyenne, Wyo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

VAN VALKENBURGH, District Judge. Plaintiff in error brings suit against the Chicago, Burlington & Quincy Railroad Company under section 8 of the act to regulate commerce, approved February 4, 1887 (24 Stat. 382, c. 104 [Comp. St. 1913, § 8572]), and the various amendments thereto, which provide:

"That in case any common carrier * * * shall do or cause to be done any act * * * in this act declared to be unlawful, such common carrier shall be liable to the person injured thereby for the full amount of damages sustained, together with reasonable attorney's fee to be taxed * * * as costs."

Plaintiff in error, since 1908, has been in the restaurant business in Gillette, Campbell county, Wyo., which point is local to the line of the defendant railroad company. May 15, 1912, defendant opened an eating house or restaurant in Gillette in connection with its station there, and has since operated the same for the accommodation of its passengers and employés; and it is further alleged in the bill that it caters to and serves at its restaurant the general public as well. It is further alleged that the defendant ships on its trains most of the commodities and supplies needed and used by it in its said restaurant business free of any charge for carriage whatever, while plaintiff for like shipments has always been required by defendant to pay thereon the regular published schedule rates then in force on defendant's railroad; that this is largely to plaintiff's prejudice and disadvantage, in that,

by reason of said defendant obtaining most of its supplies free for which similar supplies the plaintiff has been compelled to pay large tariff and freight charges, the defendant is able to sell, and since May 15, 1912, has sold its commodities in its restaurant and eating house at prices much below those for which plaintiff can sell and make a profit. The petition states that prior to the date last aforesaid he had established a lucrative restaurant business, with daily receipts in excess of $100 per day, and net profits in excess of $25 per day; that the competition of defendant immediately caused a decrease in plaintiff's business of daily receipts from $100 per day, as aforesaid, to less than $50 per day, and a decrease of net profits from $25 per day, as aforesaid, to practically nothing; that plaintiff has been damaged by loss of profits in his business in the sum of $2,900, for which he prays judgment, together with a reasonable attorney's fee to be taxed as costs.

It is conceded in the petition that it is lawful for defendant to ship, free of charge, such supplies, articles, or commodities as may be necessary and intended for its use in the conduct of its business as a common carrier; but it is averred that the operation and maintenance of the said restaurant by defendant, and the transporting of commodities and supplies therefor free of charge, is not necessary within the contemplation of the law, because "always, since May 15th, 1912, there has been ample facility, not only at the restaurant of plaintiff, but at other eating houses in Gillette, for the accommodation of the general public, including all employés of defendant." It is charged that by demanding, collecting, and receiving a less compensation for the service rendered in the transportation of the commodities and supplies for its eating house than it charges and receives from other persons, including the plaintiff, for doing for them a like and contemporaneous service, the defendant has been guilty of unjust discrimination and of an unlawful departure from the rates named in its published tariffs.

The defendant demurred to this petition upon the ground that the question, as to whether a railroad company can lawfully run a restaurant in connection with the operation of its road, is an administrative one, and must be referred to the Interstate Commerce Commission for its consideration and determination as a condition precedent to a suit of this nature. The trial court adopted this view. The demurrer was sustained, and, "it further appearing from the petition and from the arguments of counsel that the petition does not admit of being so amended as to state a cause of action," the case was dismissed, from which judgment of the court below plaintiff has sued out this writ of error.

[1, 2] It may be freely conceded that, in the present state of law, a common carrier has no right to enter the field of general business and transport the articles and commodities used and sold therein at less than the regular published rates available to the general public. It has the right to provide eating houses for its passengers and employés at points on its line, and may transport the articles and commodities for the use of such eating houses at less than the full published rate. Such practices are administrative in their nature, and the ultimate primary judgment and discretion which govern and condition them is now

lodged in the Interstate Commerce Commission, to be exercised on request and after due investigation and consideration of the public interest concerned, and in view of the preference and discrimination clauses of the Interstate Commerce Act. Intermountain Rate Cases, 234 U. S. 476, 34 Sup. Ct. 986, 58 L. Ed. 1408. Assuming the burden thus cast upon it, the Commission has considered it its duty to construe the law in advance wherever it has appeared obscure or ambiguous, so that the obligations of the railroads and the rights of the public might be promptly understood; and, with respect to the subject in controversy, it has established a rule for the guidance of carriers and public alike. This rule reads as follows:

"*Transportation for Eating Houses Operated by or for Carriers.* Carriers subject to the act may provide at points on their lines, eating houses for passengers and employés of such carriers, and property for use of such eating houses may properly be regarded as necessary and intended for the use of such carriers in the conduct of their business. Such eating houses, however, must not serve the general public or any portion thereof, with food prepared from commodities which have been carried at less than the full published rate, and no utensils, fuel, or servants at all employed in serving others than passengers and employés of the carriers as such should be carried at less than tariff rates. Such privilege as may be extended under this rule shall be applied only as to points local to the line on which the eating house is situated." Barnes on Interstate Transportation, p. 484, par. 315B.

From common knowledge and experience, as well as from the permissive provisions of the statute as thus administratively construed, it must be assumed that railroad eating houses, within the prescribed limitations, are desirable for the convenience of passengers and employés. In this sense they are necessary, and this whether or not other and privately owned restaurants are available at the same point. The advantage of a common control of train schedules and eating facilities makes this so.

[3] Courts have no power to fix rates or establish practices and cannot interfere with those fixed and established by the Commission except in cases where the orders are void. Interstate Commerce Commission v. Union Pac. R. R. Co., 222 U. S. 547, 32 Sup. Ct. 108, 56 L. Ed. 308; Atchison, Topeka & S. F. Ry. Co. v. United States, 232 U. S. 199, 34 Sup. Ct. 291, 58 L. Ed. 568. Plaintiff in error apparently bases its contention upon the rule laid down by the Supreme Court in Pennsylvania R. R. Co. v. Puritan Coal Mining Company, 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867. It is there said:

"It must be borne in mind that there are two forms of discrimination— one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. * * * But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative ques-

tion involved; the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage."

[4] Plaintiff in error contends that this action is based upon the latter form of discrimination. But is this the case made by his pleading? It is not stated that all the supplies and commodities used by defendant in its eating house are shipped on its trains free of charge, nor that the general public, other than passengers or employés, are served with food prepared from commodities which have been carried at less than the full published rate. The petition squarely challenges the right of the defendant to establish an eating house at this point, on the ground that the same is not necessary in the conduct of its business as a common carrier, because at the restaurant of plaintiff and at other eating houses in Gillette there has been and is ample facility for the accommodation of the general public, including all employés of defendant and presumably all passengers traveling upon its line. This challenge involves the lawful exercise of administrative discretion on the part of the road, subject to the supervisory control of the Interstate Commerce Commission. It is true that in this respect the allegations of the petition might conceivably be strengthened by amendment; but, as stated by the court in its judgment entry, it appeared at the hearing of the demurrer, not only from the petition, but from the arguments of counsel, that it did not admit of such amendment as to state a cause of action. It must be presumed, therefore, that counsel for plaintiff stood upon the case made by his petition as filed. He prays for damages by loss of profits alone; these, in turn, are alleged to result from loss of business. The Interstate Commerce Commission has uniformly held, where a complainant has averred that, as a result of being unjustly discriminated against by the defendant, his business had been less per month than it was during the months previous to such period, that, as such a result might flow from many causes, it could not fairly be said that such a showing entitled complainant to reparation in that respect. Barnes on Interstate Transportation, p. 635, par. 429; Rogers & Co. v. Philadelphia & Reading Co., 12 Interst. Com. R. 308; Eaton v. C., H. & D. Ry. Co., 11 Interst. Com. R. 619.

Ordinarily reparation for unjust discrimination has been awarded for damages reasonably definite and ascertainable, such as excessive freight charges, loss upon specific shipments under express contract, due to delay and established fluctuation in market, and the like. In Central Coal & Coke Co. v. Hartman, 111 Fed. 96, 49 C. C. A. 244, this court held that the loss of profits from the destruction or interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually was, but that the actual damages which will sustain a judgment must be established, not by conjectures or unwarranted estimates of witnesses, but by facts from which their existence is logically and legally inferable. The speculations, guesses, estimates of witnesses, form no better basis of recovery than the speculations of the jury themselves. Here the plaintiff alleges merely that his business has fallen off and his profits have correspondingly

decreased; but this result, as has been said, might flow from many causes. It might be due to general depression, to fluctuations in prices, or, upon the face of the petition, to the accommodation of its passengers and employés by the eating house of the defendant carrier. None of these causes would be chargeable to the defendant, and resort must be had to the realm of speculation to determine what part, if any, of this falling off in patronage could be legally traced to wrongful conduct on the part of the carrier.

It will be readily seen that the case presented is one which calls for primary reference to the Commission, to determine whether the establishment of a railway eating house at this point was a legitimate exercise of administrative discretion on the part of the carrier, and whether the reasonable rule established by the Commission has been fairly observed in the present instance. The Interstate Commerce Law provides that the Commission shall have authority to inquire into the management of the business of all common carriers, and is authorized and required to execute and enforce the provisions of the act. Any person, firm, corporation, or association feeling itself aggrieved by anything done or omitted to be done may apply to the Commission for redress.

Believing, as we do, that the action of the lower court was right, upon the record as presented, its judgment is affirmed.