No. 26,279.

THE STATE BANK OF DODGE CITY, *Appellant*, v. REED BYERS et al.,
*Appellees*.

### SYLLABUS BY THE COURT.

APPEAL AND ERROR—*Review—Verdict and Findings.* On the facts found by
the trial court, and under the contract involved in this action, judgment
was properly rendered in favor of the defendant.

Appeal from Ford district court; H. S. ROGERS, judge *pro tem.* Opinion
filed January 9, 1926. Affirmed.

*G. Polk Cline* and *Nellie Cline*, both of Larned, for the appellant.

*Carl Van Riper*, of Dodge City, and *A. L. Moffat*, of Kinsley, for the appellees.

The opinion of the court is delivered by

MARSHALL, J.: The plaintiff sued for the recovery of money. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The cause was tried without a jury, and special findings of fact were made as follows:

"1. Prior to January 23, 1917, one M. G. Boorse was the owner of 2,080 acres of land in township 22, range 42, in Hamilton county, Kansas.

"2. January 23, 1917, the said M. G. Boorse made a contract of sale of said land to Alexander A. Sharp for a consideration of $10,400; $500 to be paid in cash, $500 February 15, 1917, $1,040 on or before April 1, 1918, $1,040 on or before April 1, 1919, and $1,040 on or before April 1, 1920. Upon the payment of the amount due on or before April 1, 1920, the said parties of the first part, meaning Boorse and wife, were to convey said land to Sharp or his assignees and were to take a mortgage back of $6,280, due on or before April 1, 1924, bearing 6 per cent from April 1, 1920.

"3. This contract between Sharp and Boorse was acknowledged and filed for record in the office of the register of deeds of Hamilton county, Kansas, January 23, 1917.

"4. On the 12th day of November, 1917, Sharp assigned his interest in the contract in blank for the benefit of Clay McKibben. This assignment was acknowledged and filed for record in the office of the register of deeds of Hamilton county, Kansas February 25, 1918. Prior to the filing of this assignment from Sharp for record, Clay McKibben, with authority from Sharp, had put in the blank space left for naming the assignee the name of Reed Byers. September 22, 1919, Reed Byers assigned this contract to Clay Mc-

Appeal and Error, 3 C. J. p. 869 n. 96; 4 C. J. p. 787 n. 47.

Kibben. This assignment was acknowledged and filed for record in the office of the register of deeds of Hamilton county, Kansas, October 8, 1919.

"5. December 24, 1917, Clay McKibben executed an agreement whereby he acknowledged an indebtedness of $3,000 to Reed Byers and stipulating therein that his interest in the Boorse-Sharp land contract should be pledged to secure the payment of that sum.

"6. January 4, 1919, Clay McKibben was indebted to the plaintiff on two notes, one of $6,700, dated February 1, 1918, and bearing 8 per cent, and another of $800, due June 20, 1918, bearing 10 per cent.

"7. The indebtedness so existing on the 4th day of January 1919, had not been reduced at the time returns from the sale to Brower of the McKibben-Sharp land, which was October 9, 1919. October 9, 1919, the amount due was $8,055.63.

"8. The assignment from Byers to McKibben under date of September 22, 1919, was made for the purpose of enabling McKibben to close his deal with Brower.

"9. On the 26th day of June, 1919, McKibben made a contract with one D. M. Brower for the sale of the land described in the Sharp contract, and in addition thereto two quarters of land belonging to Byers personally, and three quarters belonging to Ernest McKibben; the contract, however, being silent as to the ownership of Byers and Ernest McKibben in the quarters referred to. The consideration named in the McKibben-Brower contract is $8 per acre, straight.

"10. In pursuance of this contract Clay McKibben on the 6th day of October, 1919, executed a deed of general warranty to D. M. Brower for the 2,720 acres of the land described in the contract. The consideration therefor was $19,200. Said deed contains a clause as follows: 'Except one mortgage of $7,280 on the southeast quarter of section 10, and all of sections 11, 23 and 33 in township 22, range 42; also a balance of $428.48 upon a mortgage of $1,285 on part of the north half of section 36, township 22, range 42, being the only encumbrance with which said lands conveyed are charged.' This mortgage of $7,280 rests upon the land described in the Sharp contract. This deed from Clay McKibben to D. M. Brower was filed for record in the office of the register of deeds of Hamilton county, Kansas, on the 8th day of October, 1919. The other 160 acres covered by the McKibben-Brower contract was school land and was adjusted by assigning the school certificate and assumption of what was due the state.

"11. On the 14th day of July, 1919, M. G. Boorse and wife by deed of general warranty conveyed the lands described in the Sharp contract to Clay McKibben. Such deed was acknowledged and recorded in the office of the register of deeds of Hamilton county, Kansas, on the 8th day of October, 1919.

"12. On the 1st day of April, 1919, McKibben executed to Boorse a mortgage on the land described in the Sharp contract in the sum of $7,280. This mortgage was acknowledged on the 29th day of August, 1919, and filed for record in the office of the register of deeds of Hamilton county, Kansas, on the 7th day of October, 1919.

"13. At the time of delivering this mortgage by McKibben to Boorse, Mc-

Kibben also paid in cash the sum of $1,040, with the interest added, totaling the sum of $1,072.63.

"14. The deal between Brower and McKibben was closed at Syracuse, Kan., and later proceeds of the sale in the sum of $15,279.50 were deposited in the State Bank of Dodge City on October 9, 1919, this deposit being made personally by the sister of Clay McKibben. Of this sum $2,560 belonged to Reed Byers, being the proceeds of two quarters included in the deed to Brower.

"15. On the 15th day of October, 1919, McKibben applied $500 of this money on his indebtedness to the bank, and an additional sum of $181.80 as interest on his indebtedness. The balance of this, $2,461.26, was applied by McKibben on a debt which his mother owed to the plaintiff bank.

"16. Prior to January 4, 1919, the plaintiff bank had asked McKibben for security upon his indebtedness to the bank, and in order to carry out his purpose of giving them security, McKibben spoke to the defendant, Reed Byers, concerning the matter of his indebtedness to the bank and suggesting that Byers write to the bank by way of assuring the bank that he would do something in that regard. At the request of McKibben, Byers, on January 4, 1919, wrote to the plaintiff as follows:

"'State Bank of Dodge City, Dodge City, Kansas.

"Dear Sirs—Mr. McKibben has asked me to make a deed to you of 2,000 acres in Hamilton county, Kansas, in township 22, range 42, and I wish to say that inasmuch as we are now making a trade of this property I do not like to complicate matters by making this deed at this time. However, I will protect you above $8,200 which I hold as a first lien on this land.
"Yours very truly,        Reed Byers.'"

"17. At the time of writing the letter in the preceding finding, McKibben was indebted to Byers in the sum of $8,200, and Byers at the time was holding this McKibben interest in the Sharp land contract by way of securing the payment of said indebtedness.

"18. In closing the transaction of procuring deed from Boorse and giving a mortgage back to him by McKibben, the State Bank of Dodge City handled the papers and carried on the correspondence with regard to the matter in making the settlement.

"19. The plaintiff did not expressly agree at any time to waive any rights it might have to proceeds arising from a sale of the land described in the Sharp contract.

"20. The notes evidencing the indebtedness of McKibben to the plaintiff bank were renewed from time to time as set up in plaintiff's petition up to about March 10, 1922.

"21. The present indebtedness of Clay McKibben to the plaintiff bank, the same being a continuance of the indebtedness existing January 14, 1919, is $7,362.77, with interest at 10 per cent from March 10, 1922.

"22. Out of the proceeds received at the Brower sale from the Sharp lands McKibben paid taxes on the Sharp lands in the sum of $157.26, being taxes for the year 1918. In order to consummate the sale with Brower, McKibben bought fence connected with the land for which he paid $75.

"23. If the plaintiff or Byers had any claim upon Clay McKibben's interest in the land, the latter would not be justified, and was not justified, in appropriating to his brothers any of the funds arising from the sale beyond the stipulated price of $8 per acre.

"24. Of the sum deposited in the plaintiff bank arising from the Brower sale, Ernest McKibben was entitled to $3,840.

"25. As a part of the consideration in the sale by McKibben to Brower, the latter assumed the mortgage for $7,280 evidencing the mortgage by Mc-Kibben to Boorse."

The plaintiff stands on the contract set out in the findings of fact. The defendant says:

"There is but one proposition presented by this appeal and that is, what is the meaning of the letter written by Byers on January 4, 1919."

What did that letter mean? It meant that the defendant, after paying the debt to himself, would pay over to the plaintiff enough of the proceeds arising from the sale of the land to discharge McKibben's debt to the plaintiff if the proceeds of the sale amounted to that much.

McKibben's interest in the land was as the assignee of one who had contracted to purchase the land under the terms and conditions named in the findings of fact. The assignment had been made to the defendant for the benefit of McKibben. Byers could convey what McKibben had and no more, but Byers had control of that title, and after writing the letter which contained his agreement with the plaintiff, he was under obligation to see that the proceeds arising from a transfer of McKibben's interest in the land were devoted to the purposes named in the letter, and were disbursed in the manner contemplated by it.

But that does not decide this lawsuit. The defendant claims, and there was evidence which tended to prove, that he was not paid anything on the indebtedness owing to him from McKibben. On the oral argument, he contended that the land had not sold for enough to pay his $8,200, and that no balance was left to be applied on the indebtedness to the plaintiff. The findings of the trial court are practically all that this court has from which to reach a conclusion on this subject.

The findings are not clear in some particulars. They show that 2,880 acres of land were sold at $8 an acre. That should have produced $23,040, but the findings recite that the consideration was $19,200. The findings also show that McKibben, when he closed the transaction with the person from whom he purchased, paid to the latter $1,072.63. They show that McKibben deposited $15,-279.50 arising from the sale of all the land. Out of this sum the court deducted $2,560 for land sold which belonged to the defendant, and $3,840 for land sold which belonged to Ernest McKibben. $500

of the amount received by McKibben was paid on his indebtedness to the bank together with $181.80 as interest on that indebtedness. Taxes were paid in the sum of $157.26; $75 was paid for fences. They also show "2,461.26 was applied by McKibben on a debt which his mother owed to the plaintiff bank." The $8,200 owing to the defendant must also be deducted from the proceeds arising from the sale of the land before he can be held liable. It does not appear from the findings that McKibben received from the land more than enough to pay his debt to Byers.

Although the findings of the court are not clear, yet they do not appear to be inconsistent with the judgment. So far as the abstracts show no request was made for additional or clearer findings. In *Kellogg v. Bissantz*, 51 Kan. 418, 32 Pac. 1090, it was declared that—

"In an action for the recovery of money and to determine the validity and priority of several mechanics' and other liens, findings of fact and of law were requested and made. The findings and judgment were brought to the supreme court without the evidence or any statement of what it proved. It was alleged as error that matters material to the validity of the liens were not stated in the special findings. Upon some material matters, no findings were made; and, upon others, the findings were general and indefinite. No request was made for other or more specific findings, and none of those made are inconsistent with the judgment. *Held,* That in the absence of the evidence or any request for other or more specific findings, no substantial error is shown." (Syl.)

In *Morehead v. Edmonds*, 99 Kan. 343 161 Pac. 610, the court said:

"A judgment will not be reversed because a trial court's findings of fact are incomplete and do not state all the facts connected with those found, where no request was made for further, clearer, or additional findings." (Syl. ¶ 1. See, also, *Pennell v. Felch,* 55 Kan. 78, 39 Pac. 1023; *Shattuck v. Harvey County,* 63 Kan. 849, 851, 66 Pac. 1057; *Stadel v. Aikins,* 65 Kan. 82, 84, 68 Pac. 1088; *Harris v. Morrison,* 100 Kan. 157, 163, 163 Pac. 1062.)

In *Drinkwater v. Sauble*, 46 Kan. 170, 26 Pac. 433, the court declared that—

"It is the duty of the supreme court, if it can, to give such a construction of the findings of the trial court and the jury, and to the general verdict of the jury, as will harmonize them and make them support the judgment." (See, also, *State v. Wood,* 49 Kan. 711, 716, 31 Pac. 786.)

The judgment is affirmed.