No. 33,455

STATE BANK OF DODGE CITY (Succeeded by FIDELITY STATE BANK, Dodge City), *Appellant,* v. CLAY McKIBBEN (PEGGY McKIBBEN, Interpleader), *Appellees.*

(70 P. 2d 1)

Opinion filed July 10, 1937.

*Albert Watkins* and *Horace H. Watkins,* both of Dodge City, for the appellant.

*Howard Rooney,* of Dodge City, *Walter F. Jones, C. E. Chalfant* and *Eustace Smith,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment sustaining a motion to quash certain garnishment proceedings instituted by the plaintiff bank in 1931 after it had obtained judgment against the defendant Clay McKibben. The person garnisheed was Reed Byers, alleged debtor of McKibben. Byers died testate in Missouri in 1935; and the Commerce Trust Company, a Missouri corporation, and Carl Van Riper, Esquire, of Dodge City, were appointed and qualified as administrators of his estate with the will annexed. The interpleader, Peggy McKibben, sister of defendant, acquired all right to his claim against Reed Byers in 1931. Whether her right thereto was superior to that of the plaintiff bank under its garnishment proceedings is the principal question in this lawsuit.

Various features of this litigation have already received the consideration of this court. (*State Bank v. Byers,* 120 Kan. 8, 242 Pac. 461; *McKibben v. Byers,* 138 Kan. 216, 25 P. 2d 357.)

The material facts in brief were these:

In 1925 the plaintiff bank recovered judgment against Clay Mc-Kibben for $9,405.26. Successive executions thereafter issued were returned unsatisfied. Sometime in 1930 Clay McKibben instituted an action in the district court of Ford county against Reed Byers for an accounting pertaining to certain business transactions between them. While that action was yet pending and undetermined, on June 11, 1931, an affidavit in garnishment was filed on behalf of the plaintiff bank directed to Reed Byers as garnishee, which recited its recovery of a money judgment against Clay McKibben, and that execution had failed to satisfy the same; and—

"That said plaintiff had good reason to believe, and does believe, that Reed Byers, of the county of Ford and state of Kansas, has property of the defendant in its [his] possession or under its [his] control, or is indebted to said defendant.

"Wherefore said plaintiff asks that a garnishee order issue to said Reed Byers *requiring him to answer the interrogatories* of said plaintiff concerning such property and indebtedness, a copy of which is hereto attached."

Pursuant thereto a garnishment summons was served on Reed Byers containing this mandate:

"Now, therefore, you [Reed Byers] are hereby respectively *ordered* and required *to answer, on or before the 6th day of July,* A. D. 1931, *all interrogatories that may be propounded* by the said plaintiff *and* be *served upon you* concerning such indebtedness and property, and with said answers return also this order and said interrogatories."

No service of this garnishment order was had on the principal defendant, Clay McKibben; no interrogatories were attached to the garnishment affidavit, and none were served on Byers, the garnishee; but on July 8, 1931, Byers did file an answer in which he averred that he was not indebted to Clay McKibben; that he had no property or effects belonging to him; but he added that he was defendant in an action wherein Clay McKibben, plaintiff, was suing him to recover an amount unknown; that this action was not then completed; that he was not and would not be liable to McKibben "unless or until a judgment is rendered in said action establishing a liability which affiant now denies."

Nothing more was done in reference to this garnishment proceeding for about five years, after which the plaintiff bank began to assert rights under it which will be considered when the other pertinent features of this litigation are brought down to that time.

On August 2, 1930, the plaintiff bank and Clay McKibben entered into a written contract in which it agreed to accept $2,500 in full settlement of its judgment against McKibben, which sum was to be paid in installments of $50 per month, and the total amount was to be paid in three years. The agreement further provided—

". . . that, so long as payments are kept up and made in the manner herein provided, no levy of execution or other legal process or proceeding shall be resorted to or used against second parties, or any of them, and none of their property or business shall be interfered with in any way; except that first party shall have the right to issue execution on a certain judgment against Clay McKibben in case No. 7971 in the district court of Ford county, Kansas, when necessary to keep said judgment from becoming dormant, but first party agrees to do no more with such execution than may be necessary to keep said judgment from becoming dormant. If the second parties shall default in the payment of the monthly or yearly sums above specified or any part thereof the first party shall be at liberty to resort to legal process or proceedings to enforce its claims against second parties, the same as if this agreement had not been made."

McKibben paid $75 on this contract the day it was executed. On June 22, 1931, the bank caused another execution to be issued "to keep said judgment from becoming dormant," and on the same day McKibben paid $100 on this contract. Afterwards he made two payments on this contract thus: October 26, 1931, $50; December 9, 1931, $50.

On July 29, 1931, McKibben sold and assigned his cause of action against Reed Byers to his sister, Peggy McKibben, interpleader, to satisfy certain obligations and debts he owed her. She had no

notice of the garnishment proceedings. Thereafter the expenses of the action between Clay McKibben and Reed Byers were borne by Peggy McKibben as interpleader. Judgment in the district court was entered in favor of the defendant Reed Byers, garnishee in this action, on March 12, 1932. Thereafter that cause was appealed to this court, and the judgment was reversed and the cause remanded for a new trial (*McKibben v. Byers*, 138 Kan. 216, 25 P. 2d 357). Afterwards the same cause was again tried before a referee, and on April 4, 1936, final judgment was entered upon a finding that Reed Byers was indebted to Clay McKibben in the sum of $5,972.19, with interest thereon, and a further sum of $2,048.28 as costs. Meantime Byers had died, but on November 6, 1936, his administrators paid into court the full amount of the judgment, interest and costs, $8,317.76.

On May 13, 1936, the court, on motion of the plaintiff bank, made an order reviving the garnishment proceedings against the administrators of Reed Byers' estate. On the same day Clay McKibben and Peggy McKibben, interpleader, filed a motion to quash the garnishment proceedings on various grounds. The trial court heard the motion at length, and made findings of fact in respect thereto; and on December 22, 1936, it sustained the motion to quash, and adjudged that Peggy McKibben, interpleader, was the owner of the proceeds of the judgment in *McKibben v. Byers* free of any and all claims of the plaintiff bank. Hence this appeal.

The vital objections to the garnishment proceedings, aside from a matter of equity, to which we shall later refer, were the failure of the bank to serve summons in garnishment or other sufficient notice upon defendant, its failure to submit interrogatories to the garnishee, its failure to take issue with the answer of the garnishee if it was dissatisfied with his answer; and the failure of the bank to make timely assertion of its right to whatever might eventually inure to the benefit of its debtor as a result of the action pending between McKibben and Byers.

A proceeding in garnishment is a special and extraordinary remedy, and it must be strictly followed and diligently pursued, otherwise it will not be given effect to reach the assets of a debtor in the hands of a third party. (*Hutchinson v. Nelson*, 63 Kan. 327, 65 Pac. 670; 28 C. J. 25.)

In our view it was a prerequisite to the efficacy of the garnishment that a summons or other process of equal potency should have

been served on judgment debtor McKibben to apprise him of the institution of the garnishment proceedings. Assuming, as counsel for the bank now contend, that the proceedings were begun pursuant to sections 544, 545 and 546 of the civil code (G. S. 1935, 60-34,107, 60-34,108 and 60-34,109), those sections do not supply a complete procedure in garnishment. They do not prescribe how the judgment debtor is to be given notice of the garnishment. What section 546 (G. S. 1935, 60-34,109) means to say is that after sections 544 and 545 have been properly invoked, all subsequent proceedings shall conform to what the code has already prescribed, as in cases of attachment, as far as applicable. Article 9 of the civil code outlines the general procedure in attachment and garnishment; and it is to that article that the plaintiff seeking to perfect his proceedings in garnishment must look for guidance. We think the defendant debtor must be served in substantial conformity with G. S. 1935, 60-943, which, since the revision of the general statutes in 1923, has replaced the former section 231 of the code.

Any judicial process, in garnishment or what not, could only be made effective upon sufficient notice to the parties concerned, otherwise the constitutional guaranties of due process in the Kansas bill of rights and the fourteenth amendment would be violated, and vitiate all that was sought to be accomplished in the garnishment proceedings. In *Murray's Lessee et al. v. Hoboken Land and Improvement Co.,* 59 U. S. 272, 280, 15 L. Ed. 372, it was said: " 'Due process of law' generally implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings. (Citations.)" On the necessity of notice to parties concerned, as a prerequisite to the validity of judicial proceedings, see *Mallory v. Leiby,* 1 Kan. 97, 101-102; *Flint River Steamboat Co. v. Foster,* 5 Ga. 194, 48 Am. Dec. 248, and note at 269, 271 *et seq.;* Note in 50 L. R. A. 577-592; *Iowa Central Railway Company v. Iowa,* 160 U. S. 389; *Louisville and Nashville Rd. Co. v. Schmidt,* 177 U. S. 230, 236.

This court has had some difficulty in discerning how the plaintiff bank can lay so much stress on the efficacy of sections 544 and 545 of the civil code when it did not even conform to the procedure which they prescribe. By their terms the order in garnishment *required the naming of a time not "more than twenty days* from the date of issuing" the order, in which the interrogatories to be propounded by the judgment creditor should be answered. The order

in garnishment did not conform to this provision of the statute. The order was issued on June 11. It required that the interrogatories be answered by July 6—in twenty-five days. Moreover, no interrogatories were ever propounded to the garnishee—in which respect the garnishment proceedings certainly did not conform to the provisions of the code relied on by plaintiff. And if any significance could be given to the answer which the garnishee, Reed Byers, did file on July 8, it could only be considered as an attempt to conform to the general provisions of article 9 of the civil code which specifically and comprehensively deal with garnishment (G. S. 1935, 60-940 *et seq.*). Furthermore, the statute provides that the answer of the garnishee shall be conclusive of its truth unless the plaintiff serves notice within twenty days that he elects to take issue thereon. The bank served no notice. The code also provides (G. S. 1935, 60-948) that whatever the contents of the answer "the plaintiff may in all cases move the court, *upon the answer of the garnishee, and of the defendant,* . . . for such judgment as he shall be entitled to thereon." (Italics ours.) Plaintiff filed no such motion. It did not bestir itself any further for five years. If the garnishment procedure had been sufficiently regular to be effective down to the point where the garnishee answered, we think it should have moved for judgment on the answer of the garnishee—judgment to the effect that if and when its debtor Clay McKibben should finally prevail in his action against the garnishee it should have prior claim to the proceeds of such judgment to satisfy its long-unsatisfied judgment against McKibben. (See *Alexander v. Clarkson,* 100 Kan. 294, 299, 164 Pac. 294, L. R. A., 1917F, 1006.)

The foregoing ought to be sufficient to show that the trial court did not err in its disposition of this cause; but as often happens when a judgment is inherently correct, it may be demonstrated to be correct on various grounds. For instance, on the very day the garnishment summons was served on the garnishee, June 22, 1931, the principal debtor, Clay McKibben, paid $100 to plaintiff according to the contract wherein it was agreed that no legal process other than execution to keep the bank's judgment alive would be resorted to during the life of the contract. If defendant had been served with process in garnishment, he would have had a complete answer based on that contract and the bank's acceptance of the $100 on June 22, 1931.

Again, the interpleader acquired her brother's interest in his

claim on July 29, 1931. At that time she knew of the agreement between her brother and the bank for the settlement of his judgment indebtedness to it, and that on June 22 the bank had agreed that no "legal process or proceeding" was to be resorted to for its collection except "the right to issue executions . . . to keep said judgment from becoming dormant." While McKibben did not pay according to the terms specified in the agreement, the bank accepted his irregular payments under that agreement after the interpleader acquired McKibben's interest in the lawsuit. Moreover, the bank never resorted to legal proceedings as it reserved the right to do if McKibben failed in his stipulated payments. So it is clear that the bank was never in a position to resort to garnishment "the same as if this agreement had not been made."

There is another principle of equity which, in our judgment, weighs strongly on the side of the interpleader. She never was notified of the attempted garnishment of the prospective proceeds of her brother's lawsuit against Reed Byers. She bought his right thereto for a lawful consideration; she fought that protracted lawsuit to a conclusion at her own expense. The bank sat back and looked on, making no claim, contributing nothing towards the success of the litigation. Under the simplest principles of equity it was therefore estopped to claim an interest in the proceeds of the judgment in the case of *McKibben v. Byers* if the garnishment proceedings it had set on foot five years previously had not been defective in the respects already stated in this opinion.

The judgment is affirmed.